### THE STATE OF KANSAS v. HILLIARD MORROW.

VERDICT IN MURDER CASE; *Weight of Evidence.* Where a criminal prosecution for murder in the first degree has been tried by a jury, and the jury has found the defendant guilty of murder in the first degree, and the court trying the cause has sustained the verdict, and where the evidence introduced on the trial is conflicting and contradictory, but where the evidence tending to show the defendant's guilt is sufficient if it were not contradicted by other evidence, and if it were allowed to have its full force and effect to prove beyond all reasonable doubt every material fact necessary to be proved in the case, and every essential element of murder in the first degree, the verdict will not be disturbed by the supreme court merely upon the ground that it is not sustained by sufficient evidence.

#### Appeal from Davis District Court.

MORROW was charged with murder in the first degree, for the alleged killing of Buck Overbee, in June 1873. He was tried at the June Term 1873, of the district court, and found guilty as charged, and sentenced to imprisonment, and death. From such conviction and sentence *Morrow* appeals to this court, alleging that the verdict is not sustained by the evidence. (The briefs of counsel present questions of fact only, the weight and effect of the evidence.)

*McClure & Humphrey*, for appellant.

*H. H. Snyder*, and *J. H. Austin*, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution for murder in the first degree. The defendant was found guilty and sentenced to be imprisoned in the penitentiary and then to be executed in accordance with the present law. (Laws of 1872, pp. 336, 337.) From this sentence the defendant now appeals. The only question raised in this court by the defendant is, whether the verdict of the jury in the court below is sustained by sufficient evidence. Indeed, the only substantial question is, whether the evidence sufficiently shows that there was such deliberate and premeditated design on the part of the defendant to kill the deceased as will constitute the killing murder in the first degree. The evidence was conflicting and contradictory; and while it is possible that the jury may have erred in weighing it, while it is possible that they may not have given to every portion of the evidence its due weight, while it is possible that they may have erred in finding from said evidence that every element of murder in the first degree was proved beyond all reasonable doubt, yet still there was evidence to sustain every material fact necessary to be proved in the case, and evidence to prove every essential element of murder in the first degree. That the defendant killed the deceased, that he did it in the manner and form charged in the information, and that he did it willfully and maliciously, we suppose there can be scarcely any doubt. The only question is, whether he did it deliberately and premeditatedly. The jury has found that he did; the court below has sustained and approved that verdict; and it is not now our province to retry the case upon its merits. It is not our province to weigh the conflicting and contradictory evidence and determine the force and value of each portion thereof. Nor is it our province to determine from the whole of the evidence whether the defendant's guilt is shown beyond all reasonable doubt. The only question that we are to determine is, whether there is sufficient evidence if it were uncontradicted by other evidence, and if it were allowed to have its full force

and effect, to prove beyond all reasonable doubt that the defendant is guilty of the offense charged against him. The following facts as shown by some of the evidence tend to prove that the offense was committed deliberately and premeditatedly, and therefore that the offense was murder in the first degree: The wife of the deceased was and is the aunt of the defendant. A child of the deceased, and a sister of the defendant, (both children,) had a fight. The wife of the deceased chastised the sister of the defendant therefor. This was the exciting cause of all the trouble that afterward ensued. The defendant was on that day sawing wood at the post office. He quit sawing wood about 2 or 3 o'clock in the afternoon and went to the house of Mrs. Fox, where his sister-in-law lived, and got his revolver. He told his sister-in-law he wanted to sell it. He told Mrs. Fox he wanted to ship it. He went out of the back door of the house, through the alley, near the Hale House, and to the house of the deceased. He met the wife of the deceased in the street, and immediately commenced to quarrel with her. He wished to know why she had whipped his sister. The deceased came out of the house and entered into the quarrel. He found that the defendant had a pistol, and then he went back into the house and got his, and then came out again, but at the request of his wife went back into the house again and put up his pistol. He then returned without weapons, in his shirt-sleeves, and his hands open. The defendant all the time kept his hands in his pockets, and his right hand probably on his pistol. At one time he partly drew his pistol out of his pocket, and then put it back again. "He said he came for revenge." "He said he would shoot who he damn pleased." "He said he had been mad some time, and was going to have his revenge, and might as well have it that day as any other." He shot the deceased at a time when the deceased had no weapons, was in his shirt-sleeves, and had his hands open. The deceased then caught the defendant and threw him down. One witness says: "I think defendant was trying to fire again." There were three loads in the

defendant's revolver at the time the shooting was done, but who put them in, or when they were put in, the evidence does not show. One witness says of the defendant: " I heard him say after the shooting that he had got his revenge, and was going to give himself up." The defendant had a friend who lived with him, who was sawing wood with him, who followed him to the house of Mrs. Fox, who then followed him from the house at a convenient distance until the shooting was done, and then joined the defendant near by. His friend says that they quit sawing wood about $2\frac{1}{2}$ o'clock P.M. Mrs. Fox says that the defendant was at her house between 3 and 4 o'clock P.M., and that the shooting was done about 15 minutes afterward. All this transpired on June 12th, 1873. There are some other suspicious circumstances. For instance, the defendant testified that when he said he would have his revenge he meant he would have the deceased arrested by the city marshal. This was all done in Junction City. Several other attempted explanations of the defendant's conduct rather tended to cast suspicion upon it, and to show his guilt. The jury undoubtedly believed that the defendant intended when he got his pistol to have a row, and to kill any person who might interfere with him, and particularly the deceased. It can hardly be supposed that he got his pistol merely to sell it, or to ship it, or to defend himself from a supposed assault to be made by his aunt. He was a full-grown man, and she was a woman. And besides, if he had stayed away from his aunt she would not have molested him. In fact, it can hardly be supposed that he got his pistol merely for the purpose of killing his aunt, for men seldom kill women. He must have got it with the intention of having a row, and of killing his uncle if he interfered. There is another circumstance which we had almost overlooked, and which tends to show ill-feeling between the two families. One witness testifies that during the quarrel the wife of the deceased said to the defendant: "Your wife went up to my house and whipped my boy." We think there is sufficient evidence to sustain the verdict of the jury. The judgment of the court below is affirmed.

All the Justices concurring.